# Nashville, C. & St. L. Ry. *v.* Yarbrough.

### *Overflow Injury.*

(Decided May 20, 1915. Rehearing denied June 30, 1915.
69 South. 582.)

1. *Waters and Watercourses; Diverting Water; Right of Action.*— It is no defense to an action for damages for diverting water that the purchaser purchased the property with the knowledge of the location of an embankment, and of how it was maintained, and of its effect upon the surface water or natural drainage.

2. *Same.*—One erecting or maintaining an obstruction on his land which collects and diverts surface water, and causes it to flow in an unnatural way on the land of another, to his damage, is liable to such other.

3. *Same; Unprecedented Flood.*—Where a railroad company constructs and maintains an embankment with a culvert large enough to carry off the water of an ordinary rainfall, it is not liable for overflowing the lands of another because of the insufficiency of the culvert to carry off water caused by an unprecedented flood which may be said to be an unusual or extraordinary rainfall affording no reasonable warning or expectation that it would likely occur again.

4. *Same; Evidence; Act of God.*—Whether the overflow of the land of another was the result of an unexpected and unprecedented rainfall is to be determined with due regard to the condition at the place where the injury occurred, and to the climatic conditions usually prevailing in the vicinity, and it is a question for the jury.

5. *Same.*—One suing a railroad company for damages for overflowing his lands due to the maintenance by the company of an embankment with a culvert of insufficient size to carry off surface water caused by a rainfall, may testify as to how many times his property has since been flooded at the same place, and under the same conditions.

6. *Charge of Court; Directing Verdict.*—Where the evidence affords a basis for different conclusions, the court cannot properly direct the verdict.

7. *Same; Ignoring Facts.*—Charges which pretermit facts shown by the evidence, are properly refused.

8. *Same; Covered by Those Given.*—The court will not be put in error for refusing charges substantially covered by written charges given.

9. *Evidence; Opinion; Issue.*—Where the question of the sufficiency of the culvert to carry off the water was in issue, a witness may not give his opinion as to its sufficiency to carry off water caused by an ordinary rainfall.

10. *Same; Hearsay.*—A newspaper account of the flood during which the diversion of water is alleged to have taken place is hearsay and not admissible.

11. *Waters and Watercourses; Diversion; Evidence.*—Where plaintiff suing for damages for diverting water had given a detailed account of his injury by the flooding of his residence and store in the night time, the question to him, "Did you suffer any annoyance * * * that night?" was proper, for an annoyance is an injury to the owner or possessor as respects his dealing with or his mode of enjoyment of the premises.

APPEAL from Madison Circuit Court.

Heard before Hon. D. W. SPEAKE.

Action by C. F. Yarbrough against the Nashville, Chattanooga & St. Louis Railway for overflowing plaintiff's property by maintenance of an embankment. There was a judgment for plaintiff, and defendant appealed to the Court of Appeals, and it transferred the cause, under Gen. Acts 1911, c. 449, § 6, to the Supreme Court. Affirmed.

Count 2 avers, in effect, that the culvert or pipe leading through the embankment was insufficient to carry off the water when it rained, and on this occasion a heavy rain fell, and the said culvert being insufficient to carry off said rainfall, the water was backed on plaintiff's property, and the same was flooded. Then follows a catalogue of the damages done.

Count 3 describes the embankment maintained, as well as the situation of defendant's property, and alleges that the natural flow of the surface water was diverted or obstructed by said embankment; that on September 23d there was a heavy rainfall, which caused a large flow of surface water, and that said embankment obstructed or diverted the natural flow of the surface water, and thereby caused the water to overflow on and flood plaintiff's property, stating the damage caused.

The pleas sufficiently appear from the opinion.

The following charges were refused to defendant: (1) Affirmative charge as to the second count.

(2) Affirmative charge as to the third count.

(4) Cause of action set up in the third count is barred by the statute of limitations of one year.

(9) Under the evidence in this case, plaintiff can recover nothing on account of mental annoyance, or mental harassment, or mental discomfort.

(5) If you believe from the evidence that the injury to plaintiff would not have occurred, but for an unprecedented rainfall, and but for the insufficiency of the county bridge, plaintiff cannot recover in this case.

(13) If you believe from the evidence that in building this bridge the county built it with so small an opening as to cause the water on the occasion in question to be forced back and overflow the county road, and run down towards Yarbrough's property, defendant would not be liable for any damages so caused.

SPRAGINS & SPEAKE, for appellant.

DOUGLASS TAYLOR, and EDWARD C. BETTS, for appellee.

THOMAS, J.—This is an action for damages for diversion of water by appellant's railroad embankment, causing it to flow on the property of appellee. The case was tried on counts 2 and 3 of the complaint as amended. Appellant pleaded to count 2 in short by consent the general issue, with leave to offer evidence of any other defense. To count 3 the general issue is pleaded, together with three special pleas, in substance as follows: (3) That the plaintiff acquired said property after said embankment had been constructed, and while it was being so maintained by defendant, with full knowledge of the location of said embankment with

reference to the location of his property, and with full knowledge of how it was maintained, and the effect it had upon surface waters, or natural drainage.

(4) That appellant provided the embankment with culverts sufficient in size to carry off the surface water from ordinary rainfalls, but that the rain referred to in the complaint was unprecedented.

(5) That the cause of action is barred by the statute of limitations of one year.

· (1) 1. To an action for damages for diverting water, it is no defense that plaintiff purchased the property with full knowledge of the location of the embankment in reference to his property, and of how it was maintained, and of its effect upon the surface water or natural drainage.—*Bigbee Fertilizer Co. v. Scott*, 3 Ala. App. 385, 58 South. 86; *Alabama Western Railroad Co. v. Wilson*, 1 Ala. App. 306, 55 South. 932; *McKee v. St. L. R. Co.*, 49 Mo. App. 174; *San Antonio R. Co. v. Dickson*, 42 Tex. Civ. App. 163, 93 S. W. 481; 40 Cyc. 582 (111); *Gulf v. Provo* (Tex. Civ. App.) 84 S. W. 275; *C. & A. R. R. Co. v. Henneberry*, 42 Ill. App. 130; *O. & M. Ry. Co. v. Wachter*, 123 Ill. 440, 445, 15 N. E. 279, 5 Am. St. Rep. 532; *O. & M. R .R. Co. v. Singletary*, 34 Ill. App. 425, 429. There was no error in sustaining appellee's demurrer to plea three to count 3 of the complaint.

(2) 2. A cause of action arises when one erects or maintains an obstruction or embankment on his own land, which collects or diverts surface water and causes it to submerge, or to flow in an unnatural manner upon, the lands of another, to his damage. In *City of Eufaula v. Simmons*, 86 Ala. 515, 6 South. 47, Mr. Justice SOMERVILLE apparently first declared the rule that, where the municipal authorities, in the construction of sewers and ditches, caused large quantities of rainwater, which

naturally flowed in another direction, to be diverted so as to flow on the plaintiff's premises in destructive quantities, resulting in injury, the corporation would be liable in damages, whether the work was done negligently or not. And a fortiori is the defendant liable when such ditches and sewers have been constructed in a negligent manner. The rule was extended to private individuals in *Arndt v. Cullman*, 132 Ala. 540, 547, 31 South. 478, 90 Am. St. Rep. 922. In *Savannah, A. & M. R. v. Buford*, 106 Ala. 303, 312, 17 South. 395, 398, the action was against a railroad company, to recover damages for injury to land resulting from the wrongful construction of an embankment so that surface waters were thereby caused to flow over and across the plaintiff's lands in a not natural way, and without plaintiff's will. Chief Justice BRICKELL said: "It is not deemed material whether the water is diverted from a running stream, or is surface water, caused to flow where it did not flow before. * * * It is settled by the current and weight of authority 'that a railroad company has not more right to obstruct the natural flow of water by an embankment, or other artificial means, or by the collection of it into an artificial channel, forcing or conducting it to a discharge upon the lands of another, than it has in the same way to dispose of water from water courses; and it is as liable for the resulting damage in the one case as in the other."—*C. of G. v. Windham*, 126 Ala. 552, 28 South. 392; *Lindsey v. Southern Railway Co.*, 149 Ala. 349, 43 South. 139; 6 Mayf. Dig. p. 921, § 5.

In *Central of Georgia v. Champion*, 160 Ala. 517, 49 South. 415, Mr. Justice DENSON, said: "That a landowner, through whose lands a stream of water flows, has a right to have the water course or flow from his land according to nature; and while railroad companies, in

constructing and maintaining their roads, may build them across streams, they must exercise due care not to obstruct streams to the detriment of landowners, by the pending back of the water and overflowing their lands."—*Ala. Gt. Sou. R. R. Co. v. Prouty,* 149 Ala. 71, 43 South. 352.

A suit for damages, for the overflow of land caused by obstructing the natural flow of a stream, was maintained in *Sloss-Sheffield Steel & Iron Co. v. Mitchell,* 161 Ala. 278, 49 South. 851, and it was declared that the injurious consequences arising from the nuisance, is the cause of action. It was declared in *Alabama Western Railway Co. v. Wilson,* 1 Ala. App. 306, 55 South. 932 where there was a ruinous deposit of sand, gravel, dirt, and debris upon the plaintiff's land, naturally resulting from the presence of an artificial embankment or fill erected on the higher land of the defendant, that such condition "constituted an actionable nuisance," regardless of whether the defendant was negligent or unskilled in the original erection of that structure.

There was no error in the overruling of the appellant's demurrer to the amended complaint.

(3) 3. In some of the cases considered the defendant was guilty, at the time of the erection of the obstruction, of a wrongful interference with the usual flow of water which, in the course of nature, would not have interfered with the plaintiff's rights. In the instant case the testimony shows that, when the embankment of the appellant's road was constructed, it had a large 8-foot trestle at the point of its crossing of the drainage, or the stream in question. This outlet, while so trestled, at all times accommodated the necessities of nature, and there was no back flow or diversion of water upon the lands in question; and it was only after the appellant had made a fill at that point, and put in the place of the trestle a 24-inch sewer pipe.

Under the fourth plea to count 3 of the complaint, the appellant sought to be excused by saying that at the point in question the embankment was provided with a culvert of sufficient size to carry off the water from ordinary rainfall, but that the rain referred to in the complaint was unprecedented. In short, that it was not appellant's failure to properly maintain the embankment, with a sufficient culvert, that caused appellee's damage, but it was the act of God in sending an unprecedented flood. This rule has been stated in *Collins v. L. & N. R. R. Co., et al.,* 176 Ala. 174, 181, 57 South. 833, 835, as follows: "Having · * * * subsequently maintained adequate provision for every exigency to be anticipated, in such case, at least, it seems that the Southern Company should be acquitted of responsibility for the results of an unprecedented flood. * * * Against such a contingency the defendants were not required to provide, for no rule of reason would require them to so provide for complainants' benefit as to restrain the creek within its banks in the event of an unprecedented flood."

The reason for the exception from liability when the damage is caused by an unexpected and unprecedented occurrence of nature is found in the fact that man cannot provide against it and has no reasonable expectation that it will likely occur. An unprecedented flood may be defined as such an unusual and extraordinary rainfall as has no example or parallel in the history of rainfall in the vicinity affected, or as affords no reasonable warning or expectation that it will likely occur again. ·

(4, 5) 4. Whether the damage complained of was the result of such an unexpected and unprecedented course of nature should be determined with due regard to the conditions at the place where the injury occurred and to the climatic conditions usually prevailing throughout

the year in that vicinity.—*Gulf Red Cedar Co. v. Walker*, 132 Ala. 553, 31 South. 374; *Lindsey v. Southern Railway Co.*, 149 Ala. 349, 354, 43 South. 139. It was a question for the jury to determine whether or not the rainfall was so unprecedented as to be deemed an act of God.—*Patterson v. Ill. Cent. R. R. Co.* (Miss.) 29 South. 93; *Georgia Railroad Co. v. Bohler*, 98 Ga. 184, 26 S. E. 739; *Ohio R. Co. v. Thillman*, 43 Ill. App. 78; *Brown v. P. C. R. Co.*, 183 Pa. 38, 38 Atl. 401; *Borchardt v. W. B. Co.*, 54 Wis. 107, 11 N. W. 440, 41 Am. Rep. 12. It was competent to ask witness Yarbrough how many times his property had since been flooded at the same place and under the same conditions.

(6) 5. That the injury complained of in this case was caused by the flow of on-rushing waters, and not by the back waters from below the embankment, is clearly shown by the fact that the waters at the culvert, on the morning of the damage complained of, were running over the railroad tracks and washing gravel from be· tween the cross-ties.

The evidence being such as to afford basis for different conclusions, there was no error in refusing appellant's charges 1, 2, 4, and 9.—*Carter v. Fulgham*, 134 Ala. 238, 243, 32 South. 684; *L. & N. R. R. Co. v. Lancaster*, 121 Ala. 471, 25 South. 733.

(7, 8) 6. Refused charge 13 pretermits the fact that the bridge and opening therein was the sole proximate cause.—*Shahan v. A. G. S. R. R. Co.*, 115 Ala. 181, 193, 22 South. 449, 67 Am. St. Rep. 20. In refused charge No. 5, the first condition hypothesized was covered by the given charges; and the second condition, touching the insufficiency of the county bridge, was misleading. There was no error in refusing charges 13 and 5.

(9) 7. Appellant asked Brown the question, "Was this 24-inch drain pipe you have there sufficient for

ordinary rainfall?" The court properly sustained appellee's objection thereto. It is not permissible for a witness to testify to his own opinion on an issue to be decided by the jury.—*Weller & Co. v. Camp,* 169 Ala. 275, 52 South. 929, 28 L. R. A. (N. S.) 1106; *City of Anniston v. Ivey,* 151 Ala. 392, 397, 44 South. 48.

(10) There was no error in refusing the hearsay newspaper account of the flood in question, written by witness O'Neal.

(11) After the plaintiff had given a detailed account of his injury by the flooding of his residence and his store in the nighttime, he was asked the question, "Did you suffer any annoyance out there that night?" and he answered, "Yes, sir." The defendant objected, and excepted to the ruling as error. An annoyance is defined to be an injury to the owner or possessor, as respects his dealings with, or his mode of enjoying, his premises. —1 Words and Phrases, 400; *Rowland v. Miller* (Super.) 15 N. Y. Supp. 701. That inconvenience and annoyance in being deprived of the use of water on his premises, in connection with proof of pecuniary loss, form an element of recoverable damages, was declared in *Birmingham Waterworks Co. v. Ferguson,* 164 Ala. 494, 51 South. 150; *Birmingham Waterworks Co. v. Watley,* 192 Ala. 520, 68 South. 330. In *Central of Georgia Railway Co. v. Sanders,* 9 Ala. App. 632, 636, 64 South. 190, it was declared that the improper treatment by the conductor, causing the plaintiff to become annoyed, inconvenienced, frightened, and nervous, was actionable; such consequences being elements of recoverable damages.

So, in trespass, damages take a wide range, warranting the awarding, in proper cases, of punitive damages. Such cases are easily distinguishable from those of mere negligence. The witness had, immediately preceding the

[Birmingham Railway, Light & Power Co. v. Williams.]

categorical answer to the question objected to, detailed the facts causing his injury and annoyance, and on which his answer was based. The court therefore committed no error in so ruling thereon.—*Birmingham Waterworks Co. v. Ferguson, supra.*

It does not appear from brief of appellant's counsel that assignments of error numbered 8, 9, and 19, are insisted upon.

The judgment of the lower court is affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.